# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2023 SEP 21  AM II: 49

| | | |
|---|---|---|
| **DAVID HOWARD,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **CASE NO.: _____** |
| **THERESA A. BISENIUS, JENNIFER** | § | |
| **M. ULWICK, MARY RUDOLPH** | § | |
| **BLACK, MICHAEL J. BROOKS,** | § | |
| **CHRISTOPHER K. BARRY-SMITH,** | § | |
| **LINDA NUTTING CUMMINGS,** | § | |
| **MICHAEL G. XAVIER, ADRIANNE** | § | **VERIFIED COMPLAINT FOR DAMAGES,** |
| **RAMOS, PETER ANDERSON,** | § | **DECLARATORY AND INJUNCITIVE** |
| **JACQUELINE BOTCHMAN-LEARY,** | § | **RELIEF** |
| **CYNTHIA J. AZIZ, ROBERT H.** | § | |
| **MINASIAN, JUDITH N. COWAN,** | § | |
| **ANDREW L. KUMIN, and PATRICIA** | § | |
| **M. BRADY,** | § | **JURY TRIAL DEMANDED** |
| | § | |
| **Defendants.** | § | |

Plaintiff, David Howard (hereinafter "Plaintiff" or "Howard"), as self-represented litigant,

by way of Complaint against Defendants, The Honorable Theresa A. Bisenius (hereinafter

"Bisenius"), The Honorable Jennifer M. Ulwick (hereinafter "Ulwick"), The Honorable Mary

Rudolph Black (hereinafter "Black"), The Honorable Michael J. Brooks (hereinafter "Brooks"),

The Honorable Christopher K. Barry-Smith (hereinafter "Barry-Smith"), Linda Nutting-

Cummings, Esq. (hereinafter "Nutting-Cummings"), Michael G. Xavier, Esq. (hereinafter

"Xavier"), Adrianne Ramos, Esq. (hereinafter "Ramos"), Peter Anderson, Esq. (hereinafter

"Anderson"), Jacqueline Botchman-Leary, Esq. (hereinafter "Botchman-Leary"), Cynthia J. Aziz,

Esq. (hereinafter "Aziz"), Robert H. Minasian, Esq. (hereinafter "Minasian"), Judith N. Cowan,

Esq. (hereinafter "Cowan"), Andrew L. Kumin (hereinafter "Kumin"), and Patricia Brady (hereinafter "Brady")(collectively "Defendants"), alleges and states as follows:

"It should be pointed out that while judicial immunity is absolute, it only applies to action that is "judicial" in nature. This lawsuit demonstrates extreme actions, though, that can be said to be beyond the scope of the judicial function, and therefore not protected by judicial immunity." Specifically, this lawsuit attacks these officers of the Court in their individual capacity.

## 1.

## <u>NATURE OF ACTION</u>

1.      Plaintiff brings this action against Defendants for violations of the Massachusetts Code of Judicial Conduct, United States Ethics Rules for Judges, Code of Conduct for Judges, Rules Governing the Courts of the State of Massachusetts, violations of civil rights, restrictions of constitutional rights, due process violations and otherwise malfeasance acting under the color of law[1] and other applicable state and federal laws.

2.      There is no adequate remedy by appeal or other action that will ensure that the Plaintiff's constitutional rights are protected in this matter.

3.      The Defendants have acted under the color of law while annihilating the Plaintiff's right to due process defined by the Fifth and Fourteenth Amendments of the United States Constitution.  This Complaint will affirm acts of encroachment under 42 U.S. Code § 1983.

---

[1] A civil rights complaint is used to bring claims that seek relief for the violation of a person's federal or constitutional rights. Title 42 § 1983 (the civil rights statute) does not confer rights, but instead allows individuals to enforce rights contained in the United States Constitution and defined by federal law. To state a claim under §1983, the person seeking relief (a plaintiff) must allege (1) a violation of rights protected by the Constitution or created by federal statute (2) proximately caused by conduct of (3) a person (4) acting under color of state law (a defendant). Crumpton v. Gates, 947 F.2d 1418, 1420 (9th Cir. 1991). Under this law, a person who acts under color of state law to violate another's constitutional rights may be liable for money damages, declaratory relief (a court declaration that a violation is occurring), or injunctive relief (an order for the defendant to act or stop acting in a particular way).

4.      Plaintiff files this Complaint pursuant to the Judicial Conduct and Disability Act of 1980, 28 U.S.C. § 351-364 against the Defendant judges for their misconduct in the case of *In re Howard v. Howard*, Docket No. ES19DO0255DR.  Plaintiff alleges that these Defendant Judges, in their official and individual capacity have violated the Cannons of the Code of Conduct for State Judges, namely Cannons 2A and 3.[2]

5.      Furthermore, Defendants have engaged in numerous instances of judicial and/or official legal misconduct[3] as explained in greater detail below.

6.      Additionally, Plaintiff will show that the Defendants actions caused the deprivation of Plaintiff's constitutional rights. See 42 U.S.C. § 1983; *Arnold v. International Business Machines Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981).

7.      Defendants, in collusion with one another, acted knowingly, improperly, and with deliberate indifference to the Plaintiff's established constitutional and civil rights acting under the color of law.[4] *See West v. Atkins*, 487 U.S. 42, 48 (1988*); Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255-56 (3d. Cir. 1994).

8.      This lawsuit concerns the need for equal justice and fairness which is demanded by the United States Constitution.  All non-custodial parents within the State of Massachusetts are guaranteed constitutional protections under federal law. Collectively, these Defendants are violating federal laws daily with impunity.

---

[2] The requirement for judicial impartiality is a requirement worldwide
[3] In the first comprehensive accounting of judicial misconduct nationally, Reuters identified and reviewed 1,509 cases from the last dozen years in which judges resigned, retired or were publicly disciplined following accusations of misconduct.  In addition, reporters identified another 3,613 cases in which states disciplined wayward judges but kept hidden from the public key details of their offenses, including but not limited to, the identities of the judges themselves.
[4] *Gomez v. Toldeo*, 446 U.S. 635, 640 (1980).

9.      Defendants violated the rights of Plaintiffs under the Fourteenth Amendment of the Constitution of the United States of America,[5] the Due Process Clause of the Fifth and Fourteenth Amendments to the Constitution of the United States of America,[6] and the Equal Protection Clause

10.     Defendants' conduct was so obviously violative of Plaintiffs rights and Plaintiffs' resulting injuries so severe that it is shocking to the conscience.

11.     Plaintiff continues to suffer the results of the extensive abuses they were subjected to by Defendants.

12.     This is an action for damages and other relief arising under the United States Constitution and the laws of the United States.

13.     Plaintiff has sustained injuries and psychological harm as a proximate result of Defendants actions and misconduct.

14.     These Defendant Judges and other legal court representatives should be voluntarily removed by self-recusal or involuntarily removed by this Court.

15.     Plaintiff's lawsuit is an attempt to stop the corruption in our Family Court judicial system.

---

[5] Section 1 - All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.
[6] The Constitution states only one command twice. The Fifth Amendment says to the federal government that no one shall be "deprived of life, liberty or property without due process of law." The Fourteenth Amendment, ratified in 1868, uses the same eleven words, called the Due Process Clause, to describe a legal obligation of all states. These words have as their central promise an assurance that all levels of American government must operate within the law ("legality") and provide fair procedures. The Fifth Amendment's reference to "due process" is only one of many promises of protection the Bill of Rights gives citizens against the federal government. Originally these promises had no application at all against the states (see *Barron v City of Baltimore* (1833)). However, this attitude faded in *Chicago, Burlington & Quincy Railroad Company v. City of Chicago* (1897), when the court incorporated the Fifth Amendment's Takings Clause. In the middle of the Twentieth Century, a series of Supreme Court decisions found that the Due Process Clause "incorporated" most of the important elements of the Bill of Rights and made them applicable to the states. If a Bill of Rights guarantee is "incorporated" in the "due process" requirement of the Fourteenth Amendment, state and federal obligations are exactly the same.

## II.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction pursuant to 28 U.S.C. §1251, §1253, §1331 and §1332, because it can hear cases that fall both within the scope of the United States Constitution in Article III Section 2 and Congressional statutes as listed above.  Furthermore, this Court has jurisdiction to hear cases to be determined by the Due Process Clause of the Constitution's Fifth Amendment.

17.     This Court has both subject matter jurisdiction as well as personal jurisdiction to hear this matter and make a binding judgment on this case.

18.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claims asserted allegedly occurred in this District. In fact, the entirety of Defendant's erroneous actions took place in the Commonwealth of Massachusetts.

19.     This Court has personal jurisdiction over Defendants because Defendants Judges aimed and purposefully directed their illegitimate actions while sitting on the bench of the Commonwealth of Massachusetts and presiding over Plaintiff's civil case.

20.     This Court has the authority to grant declaratory relief, 28 U.S.C. § 2201, as well as further relief requested in this Complaint, including injunctive relief, 28 U.S.C. § 2202.

## III.

## PARTIES

21.     Plaintiff, David Howard, is a resident of, and is domiciled in the State of Massachusetts.

22.     Defendant, Judge Theresa A. Bisenius, is a resident of Massachusetts and presides over the Probate and Family Court of the Commonwealth of Massachusetts.

23.     Defendant, Judge Jennifer M. Ulwick, is a resident of Massachusetts and presides over the Probate and Family Court of the Commonwealth of Massachusetts.

24.     Defendant, Judge Mary Rudolph Black, is a resident of Massachusetts and presides over the Probate and Family Court of the Commonwealth of Massachusetts.

25.     Defendant, Judge Michael J. Brooks, is a resident of Massachusetts and presides over the Lawrence District Court of the Commonwealth of Massachusetts.

26.     Defendant, Judge Christopher K. Barry-Smith, is a resident of Massachusetts and presides over the Lawrence District Court of the Commonwealth of Massachusetts.

27.     Defendant, Attorney Linda Nutting Cummings, is a resident of Massachusetts and is a practicing attorney and officer of the Court with the Commonwealth of Massachusetts.

28.     Defendant, Attorney Michael G. Xavier, is a resident of Massachusetts and is a practicing attorney and officer of the Court with the Commonwealth of Massachusetts.

29.     Defendant, Attorney Adrianne Ramos, is a resident of Massachusetts and is a practicing attorney and officer of the Court with the Commonwealth of Massachusetts.

30.     Defendant, Attorney Peter Anderson, is a resident of New Hampshire and is a practicing attorney and officer of the Court with the Commonwealth of Massachusetts.

31.     Defendant, Attorney Jacqueline Botchman-Leary, is a resident of New Hampshire and is a practicing attorney and officer of the Court with the Commonwealth of Massachusetts.

32.     Defendant, Attorney Cynthia J. Aziz, is a resident of Massachusetts and is a practicing attorney and officer of the Court with the Commonwealth of Massachusetts.

33.     Defendant, Attorney Robert H. Minasian, is a resident of Massachusetts and is a practicing attorney and officer of the Court with the Commonwealth of Massachusetts.

34.    Defendant, Attorney Judith N. Cowan, is a resident of Massachusetts and is a practicing attorney and officer of the Court with the Commonwealth of Massachusetts.

35.    Defendant, Dr. Andrew L. Kumin, is a resident of Massachusetts and was an appointed Guardian Ad Litem for the Commonwealth of Massachusetts.

36.    Defendant, Patricia M. Brady, is a resident of Massachusetts and is a licensed therapist appointed by the Family Court.

## IV.

## FACTUAL CONTENTIONS

37.    Plaintiff has a pending civil "family matter" lawsuit in the Defendant's Probate and Family Court of the Commonwealth of Massachusetts (Docket No. ES19DO0255DR *Howard v. Howard*).

38.    Plaintiff had a civil matter in the District Court of the Commonwealth of Massachusetts (*Howard v. Howard* – Docket No. 2018R084).

39.    This action arises from Defendants, acting in concert with one another, arbitrary and improper actions such as: (1) adjudicating actions without proper notice and due process for Plaintiff; (2) colluding with other court appointees and/or representatives without the Defendant's approval; disseminating information in a manner that places the minor children's lives in danger; (3) lending a "blind eye" to the irrefutable evidence and allegations that the minor children in the case referenced-above (*Howard v. Howard*) are in extreme danger and doing nothing to substantiate same; (4) ignoring numerous reports of the abusive mother; and (5) covering up this abuse.

40.    Defendants, by their actions as officers of the court in the above-referenced case, are endangering the lives of the minor children and Plaintiff. Specifically, Plaintiff's former wife

has been psychiatrically evaluated and medically diagnosed with "Psychopathy" and "Sociopathy," a dangerous condition that denotes a lack of empathy and targeting human life for harm, who will do anything to maintain his control of the situation.

41.    Defendants are *failing* to allow critical evidence that will substantiate Plaintiff's claims of abuse, battery, personal assaults and psychological assaults, neglect, and coercive control of the minor children.

42.    In the above-referenced civil "domestic relations" case, the minor children of the parties are in grave danger and suicidal.  Defendants simply ignore this fact and "lends a deaf ear" to Plaintiff's pleas for help.

43.    Defendants were cognizant and knew beyond a reasonable doubt that their actions violated Plaintiffs' constitutional rights.

44.    Defendants are *not* entitled to any type of "qualified immunity" from liability while performing discretionary functions because their conduct *clearly violated* established statutory and/or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396, 410 (1982).[7]

45.    Moreover, a qualified immunity cannot be invoked by officials who knew that they were violating the Constitution (subjective bad faith), or who should have known that they were transgressing a clearly established constitutional rule (objective bad faith).[8]

46.    This lawsuit concerns the need for equal justice and fairness that is demanded by the United States Constitution. Furthermore, all individuals and citizens of the State of

---

[7] School boards. as creatures of the state. (in contrast to the board members in their individual capacities), should be aware that they are not entitled to automatic qualified immunity from lawsuits for damages in matters alleging constitutional violations.  See also *Owens v. City of Independence,* 445 U.S. 622, 100 (1980).

[8] *Wood v. Strickland.* 420 U.S. at 322. *See also Butz v. Economou.* 438 U.S. at 506-07.

**VERIFIED COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF** – Page 8

Massachusetts are guaranteed constitutional protections under federal law. These Defendants *willfully* violated federal laws with impunity.

47.    In 1871, Congress created a cause of action,' now codified in 42 U.S.C. section 1983,[9] to redress the violation of constitutional rights by persons acting under color of state law. Subsequently, in a fitting centennial celebration of section 1983's enactment, the United States Supreme Court, in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*,[10] recognized a comparable cause of action against federal officials implicit in the Constitution.[11]

48.    Plaintiffs have sustained general[12] and compensatory[13] damages.[14] *See, e.g., Monroe v. Pape*, 365 U.S. 167, 187 (1961).

49.    The principal purpose of general compensatory damages is to put the Plaintiff in the same position as the Plaintiff would have been but for the Defendant's breach of a legal duty.[15] By placing the costs of breach on the wrongdoer, compensatory damages. also perform a deterrence function.[16] In addition, an award of presumed general damages enables a jury to

---

[9] 42 U.S.C. § 1983 (1976) provides: Every person who. under color of any statute. ordinance. regulation. custom. c- usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
[10] 403 U.S. 388 (1971) (violation of fourth amendment).
[11] In *Davis v. Passman*, 99 S. Ct. 2264 (1979), the Court extended Bivens beyond the fourth amendment by implying a cause of action and a damages remedy under the equal protection component of the due process clause of the fifth amendment.
[12] General damages may be awarded for either pecuniary or nonpecuniary losses and provide compensation for harm that any Plaintiff can be expected to suffer as a result of the commission of the tort in question.
[13] D. DOBBS, HANDBOOK ON THE LAW OF REMEDIES § 3.1 (1973).
[14] In *Carey v. Piphus* [435 U.S. 247 (1978)] the Court ruled that while presumed compensatory damages may not be awarded in a section 1983 action for a violation of procedural due process, nominal and proven compensatory damages are appropriate to redress such a grievance. Since Congress has not specified the damages recoverable in section 1983 and Bivens litigation,'" the courts have drawn upon the common law of damages to fashion remedies' for deprivations of constitutional rights.'
[15] D. DOBBS, supra note 14, § 3.1.
[16] *See generally* G. CALEBRESI, THE COSTS OF ACCIDENTS (1970).

**VERIFIED COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF – Page 9**

vindicate the valuable intangible rights of a Plaintiff who has been unable to prove any actual loss.[17]

50.     Plaintiffs also seek punitive damages as allowed by law.[18]

51.     The Declaration of Independence declared that "all men are created equal," and in 1788, the U.S. Constitution purported to "secure the blessings of liberty" to the American people.

52.     Civil rights and civil liberties play an important role in today's society. It impacts our daily lives. Civil right is the basic right to be free from unequal treatment, based on a certain religion, culture, gender, disability, and race. The freedom of assembly, freedom of speech, voting rights, and equal protection under the law are examples of civil rights.  These rights give all citizens the opportunity of "...life, liberty, and the pursuit of happiness"

53.     Defendants have _failed_ to allow the Plaintiff's to specifically testify about the current dangerous living situations while the minor children are in the mother's custody,

54.     Inasmuch, Defendants have awarded full custody of the minor children, despite evidence of the dangers, to the abusive mother in this case.

55.     The fight for justice, equality, civil liberties and constitutional rights have never been easy.  This matter too will be hard fought.

## V.

## THE FAMILY COURTS ARE CORRUPT

56.     Plaintiff repeats and realleges each of the following paragraphs as if set forth fully herein.

---

[17] _Young v. Gormley_, 120 Iowa 372, 375, 94 N.W. 922, 924 (1903); RESTATEMENT (SECOND) OF TORTS § 901(d), Comment c (1979).
[18] Punitive damages are awarded in addition to compensatory or nominal damages. See RESTATEMENT (SECOND) OF TORTS § 901(d) (1979). Punitive damages primarily serve penal and deterrent functions. _Id._; C. MCCORMICK, supra note 15, § 77. In addition, when punitive damages are awarded in conjunction with general compensatory or nominal damages, they also perform a vindicatory function.

57. The new generation of judges, court actors and mental health professionals too often act like accomplices to pedophile criminals, the enablers of the accurately accused criminals they declare to be acceptable custodians of the most vulnerable of our populations.

58. The world of the family courts supports not just child abuse but child torture and full lifelong destruction of children.

59. Practitioners consciously and maliciously defend parents with crimes to hide and perversions to be acted out behind closed doors on children. Then the courts sentence these children to isolation with their abusers, while the practitioners congratulate themselves by escalating their fees and presenting each other with "Best in Class" awards.

60. So-called therapists have become Torquemada inquisitors, punishers of children who continue to file complaints. They insist that traumatized children should "breathe" and just suppress the memories of assault or the crimes they witnessed against their siblings or parent. They insinuate that the abuser parent should receive sympathy and concern because that parent's feelings have been hurt.

61. Depraved behaviors and children's pleas for help are ignored. Significant self-destructive behaviors that include cutting and self-mutilation are often ridiculed by cruel, indifferent DCF case workers, present to count bodies and make sure that mindless, bureaucratic rules are enforced. These case workers show concern that the parent's house is clean and neat with food in the refrigerator and no dishes in the sink, but they fail to notice that the baby in the crib is dead or dying.

62. In some cases, children are isolated to hide crimes. In other cases, it is to promote the devastation of the complaining partner. But in either case, Protective Parents are stripped of

marital assets, reputations, and careers, saddling them with disproportionate or inappropriate child support.

63.     The courts and all associated with them have moved to a dimension of autocratic, anti-compassionate attention to the tenets of psychological assessment and treatment.

64.     Child victims can become adult predators. Criminals in court under the guise of judges, attorneys, guardians ad litem, court-appointed psychological evaluators, and other court factotum are transforming social space into dangerous territory where predators roam freely.

65.     Plaintiff is beseeching this Court to take notice of the corruption of this system and to take action to bring about lasting change.

## VI.

## RULES OF PROFESSIONAL CONDUCT

66.     Plaintiff repeats and realleges each of the following paragraphs as if set forth fully herein.

67.     In print, and in theory, it looks pretty decent and honorable when reading the American Bar Association's model rules for professional conduct where it is stated in rule 8.3 as to the duties of reporting professional misconduct in the industry. The rule speaks to a lawyer who knows another lawyer is in violation of these rules, in terms of honesty and trustworthiness, being obligated to report that lawyer to the appropriate professional authority. Likewise, when violations are known by an attorney in regard to judges committing misconduct the obligation exists where the lawyer should report this to the appropriate authority.

## __Model Rules for Professional Conduct__
### American Bar Association

**Maintaining the Integrity of the Profession**
**Rule 8.3 Reporting Professional Misconduct**

(a) A lawyer who knows that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness or fitness as a lawyer in other respects, shall inform the appropriate professional authority.

(b) A lawyer who knows that a judge has committed a violation of applicable rules of judicial conduct that raises a substantial question as to the judge's fitness for office shall inform the appropriate authority.

(c) This Rule does not require disclosure of information otherwise protected by Rule 1.6 or information gained by a lawyer or judge while participating in an approved lawyers assistance program.

*ABA Model Rules for Professional Conduct Available at: https://www.americanbar.org/groups/professional_responsibility/publications/model_rules_of_professional_conduct/*

68.    While the model rules for professional conduct seem pretty straight forward and structured to deter unethical behavior in the courts among both judges and lawyers, in practice it is a remarkable failure.

69.     The rules serve only to act as mere "window dressing" in most situations dealing with matrimonial and child custody cases. Very rarely, if ever, does one hear of an attorney in this area of law reporting a judge or lawyer to any oversight or "appropriate professional authority" because doing so could be adverse to that person's livelihood—it also may be hypocritical of many to report such instances as they may be engaging in the same behaviors on occasion.

70.     Many of the courts regularly appearing lawyers who practice in and out of the same courtrooms will almost never report such behaviors as they have to practice in front of the same judges and the same opposing lawyers on multiple occasions.

71.     This creates situations where attorneys who may want to do the right thing by reporting such violations are put in a place where they are forced to weigh the possible retaliation by judges and players that could adversely affect them and future clients. The other concerns for them are the forms of blackballing by peers that sometimes goes on against those lawyers blowing the whistle within this industry.

72.     The hurdles to address areas of misconduct are many times insurmountable due to many of the entities designed to investigate having been proven to be ineffective—shielded by a cumbersome process and system of procedures that filter out many legitimate cases of wrongdoing brought to the attention of such groups. Not to mention most of these groups do not have the authority to initiate investigations.

73.     But let us be clear, many such groups are made up of the peers of folks within the same professional community as those that are reported to them for violations of misconduct—the impropriety of this dynamic is compelling.

74.     Thus, when these oversight committees are cut from the same cloth, in the same geographic regions many times, the odds are stacked against folks who bring legitimate complaints.

75.     The expectation for accountability for any wrongdoings and professional misconduct by judges, lawyers and other players in the industry is handed an easy out—by means of a discouraging process that has been put in place.

**VERIFIED COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF – Page 14**

76.     Is the media silence on family court corruption finally ending? Not in St. Louis, where local media is completely silent about the ongoing scandal in its 21st Judicial Circuit Court. But on a national level, the dam may be leaking. On Thursday, May 13, 2021,[19] NBC aired part one of its investigation into family court judges who order children into the hands of abusers who then murder them.

77.     In the five-minute segment, NBC highlights the tragic story of Kathy Sherlock's daughter Kayden, who was beaten to death by her abusive father, even after Sherlock begged the court not to allow him to have unsupervised visits. The judge in the case, whom NBC did not name for unknown reasons, was never disciplined for his role in this child's death by the oversight board in Pennsylvania. As PJ Media's investigation has uncovered, the oversight boards that are charged with disciplining judges are full of Bar members who have no intention of holding other Bar members to account. In most cases, these boards do not even respond to complaints.[20]

78.     Family courts are operating in total secrecy under the color of law. Without oversight by the public and the media, there is no hope that any of this will change. Many states

---

[19] NBC Airs Two-Part Series on Corrupt Family Courts Putting Kids in Danger – By Megan Fox.

[20] Megan McLeod said she was six when the court battle began. McLeod's mother, Sue LaMartina, reported to authorities that while in her father's custody, Megan and her little brother were malnourished and suffering neglect. McLeod says that the GALs assigned to her case over the years were Brian Dunlap, Bruce Hilton (now a 21st Circuit Court judge), and Mark Kiesewetter. "Whenever they would visit…they didn't really seem to care what was happening," McLeod told PJM. "If they had just looked in the cabinets and the fridge they would see that we were not being fed. If they had just looked at my body, I was 50 or 60 pounds at the age of 10, they would see that I was obviously malnourished."

McLeod said that she could never tell the GALs what was going on because they would interview her where her father could overhear. "I was really vague with my answers because they would come to my dad's house where I stated I was uncomfortable, and they expected me to be completely 100% honest and open about what I was saying but I couldn't because my dad was listening."

McLeod remembers Brian Dunlap most vividly. "He said that he was worried that we were being coached. I said that we were not." McLeod says she tried to fight that charge but Dunlap would just claim she was lying. McLeod remembers saying, "I do not know how to prove it to you that we are not being coached. You will just say I am lying." McLeod also said that Dunlap had an inappropriate relationship with her father. "He was really buddy-buddy with my dad. You could tell that the relationship was more than neutral, which I do not think should have happened…he was not receptive to what we were saying."

McLeod said that the police in St. Louis County would force her to stay with her father under court-ordered visitation even when police were called to the house for violence. "I would cry to the cops and they would say 'sorry, you have to stay here,'" she told PJM after describing a disturbing incident with her father that led to police involvement.

have written codes into their laws allowing family courts to be sealed "for the privacy of children." When it is revealed that judges are giving custody to abusers and rapists, it should be clear to everyone that it is not the children they care about. The "privacy" the court wants is for itself to act without fear of being held accountable.

## VII.

## JUDICIAL IMMUNITY IS NOT ABSOLUTE

79.     Plaintiff repeats and realleges each of the following paragraphs as if set forth fully herein.

80.     Plaintiff is *not* asserting claims against the state court judges "in their official capacity." In fact, Plaintiff has not sued Defendant Judges solely in their official capacity. The Complaint makes no such allegation. One will search the entire document in vain for any statement limiting Plaintiff's claims by directing them solely against the Defendants "in their official capacity."

81.     Indeed, several allegations contained in this Complaint clearly indicate that Plaintiff's civil rights claims are directed not at the State of Massachusetts; rather, at the Defendants as individual "state actors."

82.     For example, this Complaint asserts that Defendants "have acted under the color of the law while annihilating the Plaintiff's right to due process defined by the Fifth and Fourteenth Amendments of the United States"; that Defendants "have engaged in numerous instances of judicial misconduct"; and that Defendants "aimed and purposefully directed their illegitimate actions while sitting on the bench of the Commonwealth of Massachusetts Probate and Family Court...and presiding over Plaintiff's civil case." These allegations are obviously not directed against the State of Massachusetts; the only reasonable construction renders them allegations of

civil rights violations committed by the Defendants themselves, while acting "under color of state law" as required by 42 U.S.C. § 1983.

83.     Plaintiff's allegations, therefore, are directed, at least in part, against Defendants in their *personal*, not their official, capacity. As the U.S. Supreme Court has emphasized:

> Personal-capacity suits…seek to impose individual liability upon a government officer for actions taken under color of state law. Thus. "[o]n the merits, to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right."

*Hafer v. Melo*, 502 U.S. 21, 25 (1991), *quoting Kentucky v. Graham*, 473 U.S. 159, 166 (1985) [emphasis in original]. This is precisely the nature of Plaintiff's allegations in this case. And such claims are not barred by the Eleventh Amendment. "[T]he Eleventh Amendment," the Supreme Court has clearly stated, "provides no shield for a state official confronted by a claim that he had deprived another of a federal right under the color of state law." *Id.*, 502 U.S. at 30, *quoting Scheuer v. Rhodes*, 416 U.S. 232, 237 (1974).

84.     Thus, any attempt to establish immunity from suit under the Eleventh Amendment – based as it is on a misrepresentation of Plaintiff's allegations – must fail.

85.     To begin with, the law of judicial immunity has long distinguished between retroactive and prospective remedies. In general, suits seeking prospective remedies are *not* barred by the doctrine of judicial immunity. *Pulliam v. Allen*, 466 U.S. 522, 541-42 (1984) ("judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity"). Although the scope of *Pulliam* was narrowed by a 1996 amendment to 42 U.S.C. § 1983, declaratory relief remains exempt from judicial immunity under the clear terms of the statute. *See Kampfer v. Scullin*, 989 F. Supp. 194, 201 (N.D.N.Y., 1997). Indeed, the Third Circuit Court of Appeals has specifically stated that the amended language of § 1983 "implicitly recognizes that declaratory relief is available in some circumstances, and…limits the availability of injunctive

relief to circumstances in which declaratory relief is unavailable or inadequate." *Allen v. DeBello*, 861 F.3d 433, 439 (3rd Cir., 2017).

86.    In the instant case, Plaintiff seeks, *inter alia*, declaratory relief against Defendants. Under the terms of the Third Circuit's ruling in *Allen v. DeBello, supra*, such relief is certainly not barred by the doctrine judicial immunity.

87.    This Complaint explicitly "requests that the Court enter an award in Plaintiff's favor…declaring that Defendant's orders violate the Fourteenth Amendment civil rights and is thus devoid of any legal force and effect." A judgment stating that unconstitutional custody orders issued in continuing matrimonial litigation are "devoid of any legal force and effect" is relevant to every custody-related ruling that will arise in the future course of litigation; it is aimed at the "threat of repeated injury in the future" by preventing the state court from applying an illegal ruling at any step between the issuance of the declaratory judgment and a final order. Such prospective declaratory relief is not barred by judicial immunity.

88.    A judge enjoys protection from suits under 42 U.S.C. § 1983 only to the extent that he/she acts "as a neutral and impartial arbiter of a statute," making no decisions of his/her own in the application of a statute of policy. As the Third Circuit Court of Appeals has emphasized, "a judge who acts as an enforcer or administrator of a statute ***can*** be sued under Section 1983 for declaratory or (if declaratory relief is unavailable) injunctive relief." *Allen v. DeBello, supra*, 861 F.2d at 440 [emphasis added]. *See also Supreme Court of Virginia v. Consumers Union of the United States, Inc.*, 446 U.S. 719, 736 (1980) (judges acting in an "enforcement" capacity are "proper Defendants in a suit for declaratory and injunctive relief, just as other enforcement officers and agencies [are]"); *Georgevich v. Strauss*, 772 F.2d 1078, 1088 (3rd Cir., 1985) ("Where a suit challenges statutes related to the judicial process or statutes previously enforced by the particular

judge against the Plaintiff, judges are proper parties" in a civil rights suit) [internal quotation marks omitted].

89.     In this case, Plaintiff does not seek relief from the Defendant as a "neutral arbiter" of a statute or policy. Rather, the Complaint alleges that "Defendant's conduct reveals a widespread culture of retaliation and deliberate indifference within the judicial system of the Massachusetts court system" and "a staggering failure of judicial self-governance institutional system." These allegations reflect the sort of "enforcement" role that renders a judge a "proper party" in a civil rights action under Third Circuit precedents such as *Allen* and *Georgevich*. Plaintiff alleges that Defendants have both misapplied the law in issuing his/her rulings and enforced illegal policies prevalent in the Massachusetts courts. It follows that Defendants are a proper party to this action, and that no doctrine of judicial immunity bars Plaintiff's attempt to seek relief from Defendant's administration and enforcement of wrongful judicial policies.

**V.**

**RETALITORY ACTIONS BY DEFENDANTS**

90.     Plaintiff repeats and realleges each of the following paragraphs as if set forth fully herein.

91.     On numerous occasions Plaintiff has filed complaints against the Defendants for unfair, unjust and prejudicial conduct.

92.     Plaintiff has received no meaningful response to any of these complaints.

93.     Defendants have engaged in copious additional patterns of retaliatory conduct, such as setting Plaintiff up for constant violations of court orders under credulous and false pretense.

94.     Parents have reported judges, attorneys, guardians, and psychiatrists to authorities who are to investigate complaints. To no avail they are never held accountable and continue to

keep on providing injustice. It does not matter what judge you have because if they take you off their caseload, you will just get another judge doing the same thing.

95.    Some of the minor children have expressed suicidal thoughts and made suicidal gestures as a direct consequence of their mother's abuse.

96.    Nevertheless, Defendants prohibited the minor children from seeing a psychiatrist despite recommendations that they indeed see a licensed psychiatrist.

97.    Despite all of the abusive conduct by the mother, Defendants transferred full custody to the violent and sadistic mother.

98.    Collectively, the Defendants actions reap of collusion with the cruel and abusive mother.

99.    Inasmuch, Defendants are unwilling to protect the minor children's safety; rather, they are willing to go extraordinary lengths to track down a protective parent like a common criminal and to separate the minor children from their primary loving and caring father.

100.   All of the Defendants actions give credence and credibility to the likelihood that Defendants are simply performing a "hit job" for the mother, who has already been diagnosed with the most dangerous mental disorder known to psychiatry.[21]

101.   Defendants conduct reveals a widespread culture of retaliation and deliberate indifference within the judicial system of the Massachusetts family court system.

102.   The conduct of the Defendants also represents a staggering failure of the judicial self-governance institutional system.

---

[21] The statistics are alarming. Approximately 75% of abused children handed over to their abusive parent, over 650 children have been murdered in the last ten (10) years.

**VERIFIED COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF – Page 20**

103.   The Massachusetts State judiciary will not police itself voluntarily.  This is a set of facts that calls for personal liability, punitive damages, systemic injunctive relief, and external intervention and oversight of the Defendants and the Massachusetts State judiciary.

104.   A phrase that Theodore Roosevelt made popular should be stated here: "No man is above the law and no man is below it; nor do we ask any man's permission when we ask him to obey it."

**V.**

**LEGAL OPINIONS, BELIEFS AND THOUGHTS**

105.   The United States Constitution is based on one rather undemocratic idea, the idea that there is a need for protection against a tyranny by the majority. The Constitution recognizes that, while there should be majoritarian control of the government, there also should be some form of restraint upon the majority, because majorities can be selfish and oppressive or tyrannical, and some rights are so important that they should belong to everyone, even if the majority does not think so.

106.   So, while the American system of government is primarily democratic or majoritarian, it is not purely so. The Constitution of the United States creates a government that operates as a limited democracy or what is at times referred to as a constitutional democracy because it places constitutional limits upon the authority of the government.

107.   Most of these limits can be found in the Bill of Rights of the Constitution, which states, for example, that Congress shall make no law abridging freedom of speech, and that no state shall deprive any person of life, liberty, or property without due process of law or deny to any person the equal protection of the laws.

108.    So, even if Congress and the President, which after all are elected by the people, decided unanimously to abridge someone's freedom of speech, they are proscribed from doing so by the Constitution. Even if a state legislature and governor voted unanimously to deny a person or group the equal protection of the laws, the state is prevented from doing so by the Constitution. The Constitution itself limits the authority of the Congress, the President, and the states to deprive individuals of their rights.

109.    Moreover, the branch of government that was specifically designed to protect the rights of individuals and to make certain that the other branches of government do not exceed their constitutional authority is the judiciary. Because they are appointed rather than elected and because they do not have to stand for reelection, federal judges are part of the counter- majoritarian branch of government. As a counter-majoritarian branch of government, the federal judiciary functions to oversee the other branches of government, that is, the majoritarian branches of government, to make sure they do not engage in tyranny by the majority.

110.    Again, beginning with the Declaration of Independence and culminating in the Constitution and Bill of Rights, the Founders of our nation adhered to a steadfast dedication to the rule of law. To achieve that critical goal, our forefathers.

111.    The family court system in the United States is failing our children. Our appointed judges and commissioners are supposed to act in the best interest of the child, but unfortunately, they are not.

112.    The pendulum has been swung too far in different directions when it comes to mothers' rights and fathers' rights. We should not be sold on the notion that an individual should

have rights just because they have the ability to procreate. A child's right to be safe and loved should supersede parental rights.

113.    The adversarial process of the court brings out the worst behavior for those with personality disorders. They become extremely defensive and often much more dangerous, as they resort to extreme efforts for power and control over the other party, the children, the professionals and the judge. This can include lying, spreading rumors, hiding money, hiding children, false allegations and even violence.

114.    Quite simply, the judges and commissioners of the family court system are not taking the proper time to evaluate high-conflict custody cases. The judges are too focused on moving cases through the courtroom like cattle. Two healthy parents should be able to come to an agreement based on what is in the best interest of the child.

115.    Much like a doctor becomes accustomed to the cycle of life, our courts have become accustomed to abuse, neglect and abandonment. This issue begins in the courtroom and trickles down to everyone who has a hand in the family court system. This includes the very people who are supposed to protect our children such as parenting evaluators, counselors and therapists, Guardian ad Litems and Child Welfare Services. As a society, we should demand a higher threshold when it comes to our children. Sadly, these issues come back to parental rights and the fact that the family court system places a higher priority on parental rights than what is truly in the best interest of our children.

116.    Abusers routinely use family court as a weapon to punish their ex-spouses.  The family court system has become a sword and not a place for fairness, justice, or child safety. It is appalling that courts are unable to detect who the high conflict party is, often lumping the victim

into the mix. We need to raise awareness for all the parents who have lost custody battles and for the children who get caught in the crossfire.

117.    Expensive attorneys have perpetuated this problem and need to be held accountable, too. Most of the time, these abusers just want to get off the hook of paying child support. Even worse is when they seek revenge by attempting to make the other parents pay *them* child support. Abusers do this by attempting to win full custody. Sadly, many times, this trick works! It is happening every day across America. It is a dirty tactic, and it needs to not only be stopped but prevented!

118.    Our national statistics show that over a hundred children per year are killed by the parent that the judge mistakenly placed them with following a trial. This is a complete and tragic failure of the family courts. It is also the personal failure of the judges who are not able to detect immediate threats to children's safety. While some courts tunnel vision on assigning parents' rights to their children, the more important concern of a family court should be to protect the children. Child safety should come first! Money should not buy sole legal custody. Money-hungry, unethical lawyers should not help beat up an ex who is just trying to be a good, loving mother and get away from an abuser.

119.    Plaintiff is one of the victims of family court abuse by my children's mother. Each year, she continues to be litigious, filing motion after motion against me. This has resulted in financial abuse—being so broke from legal fees from defending myself.  She has outright attempted using the family court to steal our children away from me. After all her countless, senseless motions, it is evident that she is just trying to punish me through the justice system. I have not neglected nor abused our children—like she falsely accuses me.

120.    As we all already know, major portion(s) of our legal system's failure to protect abused children occurs in state family courts. Understandably, when the abuser is a parent of the child and the other parent is innocent of any complicity in the abuse, the "protective parent" often seeks to dissolve the marital relationship, or, if the abuse is discovered post-divorce, seeks to restrict or eliminate visitation privileges. Unfortunately, the judicial system from which the protective parent and child are seeking justice and protection is comprised of judges and court personnel who lack sufficient training in child abuse issue and are often indifferent to the child's allegations of abuse, particularly allegations of sexual abuse.

121.    Mental health professionals and attorneys' ad litem are often appointed by judges in return for campaign favors and tend to be mere puppets of the court. Further, critical court decisions can be based more on personal relationships with lawyers than on sound legal principals. As a result, the protection of the child and any due process to which the child is entitled is given little or no consideration and the abuser is frequently given unrestricted visitation with the child, if not outright possession. Child abuse, whether sexual or physical, and child protection becomes only incidentally a custody question.

122.    Traumatized originally by the perpetrator, the child is victimized again by the legal system designed to protect him/her. This legal system was originally put into place in order to identify children who had been abused or severely neglected by their parents or caretakers, remove those children at risk of further abuse or neglect and place them in protective custody (or terminate parental rights and place the child with adoptive parents), and bring perpetrators of child abuse and criminal neglect before the bar of justice. However, since its creation, this system has devolved into one where incompetent, ineffective, overwhelmed, and sometime corrupt government officials

and entire bureaucracies, who are accountable to no one, are making decisions resulting in abused and neglected children being left in dangerous homes.

123.     Although an alarming picture of the family courts' failure to protect children has already developed, the best evidence in support of this, particularly in cases involving parents attempting to save their children from further abuse, often involves court proceedings wherein the records have been sealed. Allegations of altered transcripts, altered or destroyed government documents, ex parte' communications, and hearings held and orders issued without court reporters are not limited to the few highly publicized child abuse cases which make national news but are being heard throughout nation. Statistical data in support of this failure and its impact on our nation is overwhelming.

124.     Fundamental to understanding why we are failing the abused child is the fact that children who are victims of crimes are treated differently from all other victims of crimes. Only in instances of crimes against children does our law enforcement establishment allow CPS, a social service agency, lacking law enforcement training, experience, and priorities to receive the initial report of abuse, to perform the initial "civil" investigation of the crime, and dictate the progress of the criminal case.

125.     Only in cases of child abuse is a victim forced by the state to live in the same home with his or her abuser. And, only in cases of child abuse is a person denied the right to be safe in his or her own home. This points out a fundamental issue involving the rights of children: They have no rights. Because children cannot speak for themselves, they are denied access to justice and equal protection under the law.

126.     Allowing CPS to control the criminal investigation and the determination of when or if to remove the child from harm's way has proved to be a fatal error by law enforcement.

Whereas police agencies measure their response time to the scene of adult crimes in minutes (and child abuse cases invariably involve first degree felonies where the child is literally being held hostage by the perpetrator), CPS measures acceptable response time in terms of days. A "priority one" or life-threatening report of child abuse means CPS is required under their own guidelines to make the crime scene in 24 hours!

127.    Worse yet, CPS lacks the victim's perspective of law enforcement (whose complaining witness must be protected to preserve the criminal case). CPS's "client" is not the child, but the family. Their goal is to rehabilitate the perpetrator and preserve the "family unit"; to perform a social experiment at the child's expense. Unfortunately, few of such experiments have shown to be successful. Rates of re-abuse in such homes are astronomically high.

128.    This family preservation bias has been strongly motivated by federal funding which has required, as a condition to receipt of the funds, that local CPS agencies demonstrate that "reasonable efforts" have been made to preserve the family. Not surprisingly, when the vulnerable child abuse victim is kept in the same home with the person whom they may testify against and perhaps send to prison, the child often forgets or "recants" the allegations. This would be no different than forcing an adult victim of rape or battery to live with their rapist or batterer during the pendency of the criminal investigation, except that children are placed in even greater danger. It is inherently contradictory to have the same agency responsible for the investigation of a crime and protection of the child, on the one hand, and the preservation of the abusive family on the other! Despite the best intentions of the most dedicated social workers, a child cannot be protected in an abusive home.

129.    As various parts of the country have experienced "system failures" with CPS, a national consensus has developed that this family preservation agenda is risky and unworkable,

and that children must be removed from homes whenever they are abused or neglected. This attitude is strongly supported by research from the social sciences. While some efforts to rehabilitate parents who neglect or abuse their children have been successful, the results have never been predictable. In fact, the overwhelming statistical and clinical evidence indicates that most child abusers will continue to abuse, regardless of rehabilitation programs. Dr. Michael Stone, Ph.D, a nationally recognized expert on family violence and formerly one of the strongest proponents of family preservation, has stated that the evidence is in, and the policy of family preservation has been an abysmal failure.

130.    Parents have reported judges, attorneys, guardians, and psychiatrists to authorities who are to investigate complaints. To no avail they are never held accountable and continue to keep on providing injustice. It does not matter what judge you have because if they take you off their caseload, you will just get another judge doing the same thing.

## VI.

## COUNT ONE

### Violation of the Unites States Constitution
### Fourteenth Amendment
### (5 CFR § 732/301)

131.    Plaintiff repeats and realleges each of the following paragraphs as if set forth fully herein.

132.    All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

133.   The individual rights protected under the Fourteenth Amendment can be understood in three categories: (1) "procedural due process;" (2) the individual rights listed in the Bill of Rights, "incorporated" against the states; and (3) "substantive due process."

134.   "Procedural due process" concerns the procedures that the government must follow before it deprives an individual of life, liberty, or property. The key questions are: What procedures satisfy due process? And what constitutes "life, liberty, or property"?

135.   Historically, due process ordinarily entailed a jury trial. The jury determined the facts, and the judge enforced the law. In the past two centuries, however, states have developed a variety of institutions and procedures for adjudicating disputes. Making room for these innovations, the Court has determined that due process requires, at a minimum: (1) notice; (2) an opportunity to be heard; and (3) an impartial tribunal. *Mullane v. Central Hanover Bank* (1950).

136.   Defendants have constantly ignored evidence that mother had coerced, threatened, starved, and psychologically abused the minor children and made disparaging remarks about the Plaintiff father.

137.   Defendants engaged in improper ex parte' communications with the opposing counsel in the above-referenced case.

138.   Defendants continually treated the Plaintiff and his counsel in a demonstrably egregious and hostile manner.

139.   Moreover, Defendants retaliated against the Plaintiff for reporting judicial misconduct and wrongdoing.

## VII.

## COUNT TWO

### Civil Action for Deprivation of Rights - Retaliation
### (42 U.S.C. § 1983)

140. Plaintiff repeats and realleges each of the following paragraphs as if set forth fully herein.

141. Defendants unlawfully retaliated against Plaintiff for opposing them and filing complaints against them.

142. Defendants' retaliations deprived Plaintiff of his right to equal protection guaranteed by the Fourth Amendment to the United States Constitution.

143. Defendants' retaliation deprived Plaintiff of his right to due process under the law.

144. Defendants' retaliation caused Plaintiff damages enumerated below.

## VIII.

## COUNT THREE

### Civil Action for Deprivation of Rights - Retaliation
### Freedom of Speech (42 U.S.C. § 1983)

145. Plaintiff repeats and realleges each of the following paragraphs as if set forth fully herein.

146. Plaintiff engaged in constitutionally protected speech on matters of public concern, including but not limited to, speech concerning ongoing corruption, harassment, and retaliation by Defendants and within the Massachusetts court system.

147. Defendants' retaliation deprived Plaintiff of his right to equal protection guaranteed by the Fifth Amendment to the United States Constitution.

148. Defendants' retaliation caused Plaintiff damages enumerated below.

## IX.

## DEFENDANTS CONDUCT WARRANTS PUNITIVE DAMAGES

149.    Plaintiff repeats and realleges each of the following paragraphs as if set forth fully

herein.

150.    Defendants conduct warrants the imposition of punitive damages.   The factors

justifying punitive damages, include but are not limited to, the following:

      a.     Defendants ignored information available to them that re-enforced the dangerous and abusive conduct of the mother;

      b.     Defendants acted with knowledge that their statements and actions were false;

      c.     Defendants acted with knowledge of Plaintiff's deep-seated love for his children, citing statements they knew to be legitimate; nevertheless, Plaintiff was held in contempt of Court, setting him up for a sanctions against and threatening arrest and detention.

      d.     Defendants knew that their actions would have a damaging impact on the Plaintiff and his minor children's lives; and

      e.     Even after substantial personal information about the children's condition Defendants refused to accept these legitimate conditions and held him in contempt anyway.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter an award in Plaintiff's

favor, and against Defendants, as follows:

      a.     awarding Plaintiff compensatory damages in an amount to be determined;

      b.     awarding Plaintiff punitive damages in an amount to be determined;

      c.     awarding Plaintiff all expenses and costs, including but not limited to, all attorney's fees;

      d.     declaring that Defendants orders violates the Fourteenth Amendment civil rights and is thus devoid of any legal force or effect:

e.   enjoining Defendants from enforcing the established Court Orders against the Plaintiff and recusing Defendants from Plaintiff's civil case;

f.   re-establishing Plaintiff's sole custody of the minor children;

g.   award Plaintiff not less than twenty-five million dollars ($25,000,000.00) in collective damages; and

h.   such other and further relief as the Court may deem appropriate and just.

DRAFTED: September 19, 2023.

Respectfully submitted,

*David Howard*

**David Howard,** *Pro Se Plaintiff*
21 Rocky Hill Road
Andover, Massachusetts  01810
Telephone: (207) 751-6156

**SERVE DEFENDANTS:**

**HONORABLE THERESA A. BISENIUS**
Commonwealth of Massachusetts Probate and Family Court
Essex County Division
36 Federal Street
Salem, Massachusetts 01970
Telephone: (978) 744-1020

**HONORABLE JENNIFER M. ULWICK**
Commonwealth of Massachusetts Probate and Family Court
Essex County Division
Administrative Office
3 Center Plaza, Suite 210
Boston, Massachusetts 02108
Telephone: (978) 744-1020

**HONORABLE MARY RUDOLPH BLACK**
Commonwealth of Massachusetts Probate and Family Court
36 Federal Street, Suite 4
Salem, Massachusetts 01970
Telephone: (978) 744-1020

**HONORABLE MICHAEL J. BROOKS**
Commonwealth of Massachusetts
District Court Department
Middlesex County
Natick Division
600 Concord Street
Framingham, Massachusetts 01701
Telephone: (508) 620-9110

**HONORABLE CHRISTOPHER K. BARRY-SMITH**
Middlesex County Superior Court
Department Civil H
Courtroom 710
370 Jackson Street
Lowell, Massachusetts 01852
Telephone: (978) 656-7800

**LINDA NUTTING CUMMINGS, ESQ.**
Law Offices of Linda Nutting Cummings
23 Main Street,
Andover, Massachusetts 01810
Telephone: (978) 470-3535

**MICHAEL G. XAVIER, ESQ.**
Prince Lobel Tye, LLP
One International Place, Suite 3700
Boston, Massachusetts 02110
Telephone: (617) 456-8000

**ADRIANNE RAMOS, ESQ.**
Prince Lobel Tye, LLP
One International Place, Suite 3700
Boston, Massachusetts 02110
Telephone: (617) 456-8000

**PETER ANDERSON, ESQ.**
McLain Middleton
900 Elm Street, 10th Floor
Manchester, New Hampshire 03101
Telephone: (603) 625-6464

**JACQUELINE BOTCHMAN-LEARY, ESQ.**
McLain Middleton
900 Elm Street, 10th Floor
Manchester, New Hampshire 03101
Telephone: (603) 625-6464

**CYNTHIA J. AZIZ, ESQ.**
Law Office of Cynthia J. Aziz
127 S. Broadway
Lawrence, Massachusetts 01843
Telephone: (978) 682-5560

**ROBERT H. MINASIAN, ESQ.**
Law Office of Robert H. Minasian
127 S. Broadway
Lawrence, Massachusetts 01843
Telephone: (978) 682-5560

**JUDITH N. COWAN, ESQ.**
The Law Office of Judith N. Cowan
175 Andover Street, Suite 205
Danvers, Massachusetts 01923-1443

or

The Law Office of Merril S. Chin
1 Rear Newbury Street, Suite 303A
Peabody, Massachusetts 01960-3816
Telephone: (978) 745-6600

**DR. ANDREW L. KUMIN**
Clinical Psychologist
1 Salem Green, Suite 400
Salem, Massachusetts 01970
Telephone: (978) 745-1555

**PATRICIA M. BRADY, COUNSELOR**
Center for Achieving Balance for Children and Family
84 High Street, Suite 8
Medford, Massachusetts 02155
Telephone: (781) 676-3169

## DECLARATION OF DAVID HOWARD

I, David Howard, declares as follows:

1.        I am over the age of eighteen (18) years of age and am a party to this action.  I have personal knowledge of the facts stated in this declaration, and if called as a witness, could and would testify competently to the truth of the facts stated herein.

2.        I make this declaration in support of this Complaint for Damages, Declaratory Relief and Injunctive Relief.

3.        I respectfully request that the Court accept my Complaint and grant the requested Declaratory and Injunctive Relief.

4.        I declare under penalty of perjury under the laws of the State of Massachusetts that the foregoing is true and correct and that this Declaration was executed on September 19, 2023, in Andover, Massachusetts.

**David Howard**, *Pro Se Plaintiff*

## CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

**David Howard**, *Pro Se Plaintiff*

## UNDERSTANDING OF ADDRESS CHANGE REQUIREMENTS

I agree to provide the Clerk's Office with any changes to my address where case-related documents or papers may be served.  I further understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

DATED: September 19, 2023.

**Samantha Bowler**
Notary Public, State of Maine
My Commission Expires 12/2019

**David Howard**, *Pro Se Plaintiff*

VERIFIED COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF – Page 35